**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0167n.06

**No. 17-1923**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff-Appellee,** | **FILED**<br>Mar 30, 2018<br>DEBORAH S. HUNT, Clerk |
| **v.** | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE** |
| **WILLIAM ANTHONY EMBRY,** | **WESTERN DISTRICT OF MICHIGAN** |
| **Defendant-Appellant.** | |

BEFORE:    MERRITT, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.**  Defendant William Anthony Embry ("Defendant") appeals from the 144-month sentence imposed by the district court following Defendant's guilty plea to charges of possession with the intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii), and (b)(1)(B)(iii).  For the reasons that follow, we **AFFIRM** Defendant's sentence.

## BACKGROUND

On December 4, 2014, investigators obtained and executed a search warrant on Defendant's home in Gaines Township, Michigan, whereupon they discovered 972 grams of cocaine, 94.2 grams of cocaine base, $3,890 in cash, and various drug packaging paraphernalia. A grand jury indicted Defendant on two counts of possession with the intent to distribute cocaine and cocaine base.  Defendant pleaded guilty to these charges on March 21, 2017.

Defendant's presentence report found that Defendant's seven previous felony controlled substance convictions triggered a career offender designation. Applying the sentencing enhancement associated with this designation, the report calculated an offense level of 31 and placed Defendant into criminal history category VI, resulting in a recommended sentence of 188 to 235 months' imprisonment. Without the career offender designation, Defendant's recommended sentence would have been 84 to 105 months' imprisonment, reflecting an offense level of 25 and criminal history category IV.

The district court imposed a sentence of 144 months' imprisonment. In varying downwards from the recommended sentence of 188 to 235 months, the court explained that it considered the full extent of the career offender enhancement unnecessary to achieve the purposes of sentencing:

> I do think some downward variance is appropriate here from the guideline range, but I also think this is a case that warrants some measure of the career-offender enhancement, even if not all of it, so that the final sentence the Court intends will be above where we would be without the career-offender enhancement. And let me just go through the factors that are on my mind.
>
> The first factor is that Mr. Embry is a person who, when I chart out the criminal history and some other factors I'll talk about, really since he left his mother's house at age 18 has dealt with drugs. Eighteen is his first conviction involving marijuana and alcohol, including the sale of at least alcohol to minors. And then really he just progressed forward to where we are today. And in every time sequence of Mr. Embry's life there's at least one conviction of a serious distribution nature, drug distribution nature. Some are more serious than others. But what it tells me is that Mr. Embry, really since becoming an adult, has made drug sales his principal occupation. I think that's corroborated because the presentence report doesn't really talk about any other significant career or occupational work. There's some years in which Mr. Embry was working in a limited way. But his support didn't come from legitimate means, and the conviction history suggests the support came merely from selling drugs.
>
> There's no GED or diploma that Mr. Embry earned either. Though at least from my observation, which has been limited, just through the plea hearing, through this kind of a process, he's plenty intelligent and could easily do that in my view

2

if he set his mind to it. I think he's been preoccupied with the street and other things that demonstrate the conviction history we have. So that's one.

(2) It's true in my mind that much of the history, even though it's very persistent, even though it is also of a similar type, that is the sale of drugs, most of the criminal history stays at a fairly low level as drug crimes go. Most of them are marijuana. Unfortunately, especially for Mr. Embry in this case and the way the guidelines work with or without career offender, moving into cocaine, moving into crack cocaine, that just generates higher guideline ranges and escalates the significance and seriousness of the drug activity. But the overall history, overall not so much, as Ms. Nieuwenhuis cites in her briefs as well. So I think even though there's a lot of it, even though it's consistent and persistent, it's not the level of seriousness, not the level that looks like a strong organizational network, for example, or one that's held together through coercion or violence of any kind. It's just steady dealing.

Ultimately when I put all of the factors together, as I said at the outset, I think there needs to be some added punishment to what would otherwise be here because of the career-offender enhancement which appropriately applies for the reasons I indicated, but not the full amount. I don't think the full amount is needed, because as I indicated the overall pattern of dealing doesn't involve in my estimation violence or even significant distribution and organization beyond what we see here. And I would note that most of the quantity that is loaded here on the guidelines, apart from the career offender, come from Mr. Embry's own post-Miranda statements. If you just went with what was found in the search, I think he would be even a couple levels lower than that.

So all that leads me to saying the appropriate 3553 sentence in my view is between the career offender range, between where we'd be without the career offender range, and the Court's intended sentence is 144 months of custody. Which I think is a lot of time for anybody, regardless of how much time that person has served in the past. And I think it splits appropriately the factors in Mr. Embry's favor and the factors against him in weighing the purposes of sentencing.

(R. 28 at PageID # 166–68.) Defendant now appeals the 144-month sentence entered by the district court.

## DISCUSSION

When reviewing the substantive reasonableness of the district court's sentencing decision, this Court applies a deferential abuse of discretion standard. *United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015). A presumption of reasonableness applies to a

3

sentence that, like Defendant's sentence, is below the Guidelines range. *See United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013); *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009); *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation and internal quotation marks omitted). Meanwhile, "a sentence may be substantively unreasonable where the district court 'selects the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Moon*, 513 F.3d 527, 543 (6th Cir. 2008) (quoting *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)) (alterations in original).

The factors set forth under § 3553(a) that must be considered by the sentencing court include, among others not pertinent here:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . .
>
> (5) any pertinent policy statement—

4

> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments to such policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

18 U.S.C. § 3553(a). Congress has directed the U.S. Sentencing Commission ("Commission") to promulgate a standardized rubric to guide courts' consideration of "the nature and circumstances of an offense" as well as "the history and characteristics of the defendant" under § 3553(a)(1). *See* 28 U.S.C. § 994. This rubric, published as the U.S. Sentencing Guidelines ("Guidelines"), allows courts to generate a recommended sentencing range for each criminal defendant based on two calculations: an offense level and a criminal history score. Some provisions of the Guidelines are dictated directly by statute, whereas others are a product of the Commission's "important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007) (citation and internal quotation marks omitted).

A sentencing court's failure to consider a relevant provision of the Guidelines is an abuse of discretion. *See Rita v. United States*, 551 U.S. 338, 356–58 (2007); *Gall v. United States*, 552 U.S. 38, 49 (2007). However, if the Sentencing Commission has applied its expertise and concluded that the application of a particular Guidelines provision "produces disproportionately harsh sanctions . . . 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)," a district court may reasonably vary downwards to neutralize the impact of the relvant Guidelines provision. *See Kimbrough*, 552 U.S. at 109–10 ("[I]t would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the

crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."); *United States v. Blackman*, 678 F. App'x 400, 401 (6th Cir. 2017).

In 2016, the Commission concluded that the career offender enhancement, USSG §4B1.1, is not necessary in light of the purposes of sentencing set forth in § 3553(a), at least insofar as it applies to criminal defendants whose "career" offenses do not include a crime of violence. *See* U.S. Sentencing Comm'n, "Report to the Congress: Career Offender Sentencing Enhancements," Aug. 2016, at 2 ("2016 Report"). The career offender enhancement significantly increases[1] a defendant's recommended sentence if the defendant meets the definition of a career offender, defined under the Guidelines as follows:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*See* §4B1.1. Based on this definition, the 2016 Report recognizes three distinct classes of career offenders based on the types of offenses that can trigger a career offender designation: (1) drug trafficking only; (2) violent only; (3) and mixed. 2016 Report, at 2. Following a lengthy study of recidivism rates among the three classes of career offenders, the Commission found that drug trafficking only career offenders "are not meaningfully different from other federal drug trafficking offenders and should not categorically be subject to the significant increases in penalties required by the career offender directive." *Id.* at 3. The Commission therefore concluded that the §4B1.1 enhancement should apply only to "those offenders who have committed at least one 'crime of violence,'" but the Commission found that it could not amend

---

[1] Section 4B1.1 overrides the recommended sentence under the Guidelines unless the calculated range is already "at or near" the statutory maximum. *See* 28 U.S.C. § 994(h).

the definition of "career offender" itself because that term is defined by statute under 28 U.S.C. § 994(h). *See id.* Accordingly, the Commission "recommend[ed] that Congress amend the directive." *Id.* Congress has taken no action on the Commission's recommendation.

Defendant's sole argument in this case is that his sentence is unreasonable because the sentencing court gave too much weight to the career offender enhancement, USSG §4B1.1. As an individual who meets the description of a drug trafficking only career offender, Defendant asserts that the evidence and reasoning presented in the 2016 Report renders his sentence unreasonable so long as he received *any* enhancement to his sentence based on USSG §4B1.1. (*See* Def. Br. 10 ("Even here, where the district court varied downward from the range, the 144-month sentence is substantively unreasonable because the district court started from an unreasonably high career offender range.") Defendant's argument fails for two reasons.

*First*, Defendant's argument fails because he did not request that the sentencing court give less weight to the career offender provision based on the 2016 Report. If Defendant had articulated this request, the sentencing court would have been required to consider it.[2] *See Rita*, 551 U.S. at 356–58; *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) ("Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."). We cannot find that the sentencing court abused its discretion by failing to consider an argument that Defendant did not raise, particularly where, as here, the court would have been obligated only to consider—not to accept—the argument. *See Kimbrough*, 552 U.S. at 109–10; *Blackma*n, 678 F. App'x at 401.

---

[2] Defendant does not argue that the 2016 Report qualifies as a "pertinent policy statement" that the sentencing court failed to consider under § 3553(a)(5).

*Second*, Defendant's argument fails because the sentencing court's reasoning reflects the recommendations of the 2016 Report, even if the court did not mention the 2016 Report by name. Although the sentencing court did not describe Defendant as a "drug trafficking only career offender," the court nevertheless acknowledged that Defendant's criminal history was primarily of "a similar type, that is the sale of drugs," that "most of the criminal history stays at a fairly low level as drug crimes go," and that "the overall pattern of dealing doesn't involve . . . violence." (R. 28 at PageID # 167.) On this basis, the court contemplated that an enhancement to Defendant's sentence might not be appropriate under the career offender provision. The court ultimately concluded that a career offender enhancement was appropriate despite Defendant's nonviolent criminal history, however, because of two recidivism-related concerns: (1) Defendant's "principal occupation" during his adult life has been the sale of drugs, suggesting a risk of recidivism because Defendant currently lacks other occupational skills; and (2) the trajectory of Defendant's drug trafficking activity has escalated from marijuana distribution to cocaine and crack cocaine distribution. (*Id.*) Based on these concerns, the sentencing court determined that a sentence greater than 84 to 104 months—and specifically 144 months—was appropriate "with or without the career offender" enhancement. (*Id.*) Therefore, the court appropriately used the Guidelines as "the starting point and the initial benchmark" when determining Defendant's sentence, *Gall*, 552 U.S. at 49, and it considered the precise recommendations of the 2016 Report even if it did not mention the report by name.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's sentence.