NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0621n.06

Case Nos. 17-1054; 17-1055; 18-2127; 18-2129

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Dec 16, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| ARIA OMAR SABIT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: ROGERS, STRANCH, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Doctor Aria Sabit defrauded the government and dozens of his patients out of millions of dollars. On top of that, his fraud left many of his patients in excruciating pain and with serious bodily injuries. The district court imposed a sentence of almost twenty years in prison, a lifetime of supervision, and nearly two million dollars in restitution. We affirm.

I.

Shortly after Sabit finished his medical residency, he began working at a hospital in California. While there, Sabit persuaded his hospital to buy spinal implant devices from a company called Apex Medical Technologies. Apex was a medical-device "vendor" that paid surgeons—including Sabit—lucrative kickbacks when they used Apex's products. Because of these financial incentives, Sabit performed unnecessary spinal surgeries and inserted unnecessary spinal implant devices. He then billed Medicare.

Sabit later moved to Michigan. Again, he told patients they needed spinal surgery. Sabit then operated on the patients and told them (falsely) that he had inserted the agreed-upon medical device. Sabit also falsified his operative reports to make the patients think he had put the spinal devices in place. He then would submit (or cause others to submit) the bill to Medicaid or a private insurer despite knowing that the claims were false. During this period, Sabit also prescribed a controlled substance without a legitimate medical purpose.

Federal prosecutors eventually charged Sabit with four counts of healthcare fraud, one count of unlawful distribution of a controlled substance, and one count of conspiracy to commit healthcare fraud. The parties negotiated a plea agreement under Rule 11(c)(1)(C) that, if accepted, would have required the district court to impose a specific sentence. After reviewing the agreement, the district court rejected the agreement because it unduly cabined the court's sentencing discretion. Sabit ultimately pled guilty to all counts without a plea agreement. The district court then sentenced him to 235 months in prison, three years of supervised release on the healthcare-fraud counts, and a lifetime of supervised release on the controlled-substance count. After holding more hearings, the court also ordered Sabit to pay $1,976,532.44 in restitution.

II.

Sabit raises numerous challenges on appeal. To simplify things, we'll group these challenges into (1) disputes about how the district court ran the criminal proceedings, (2) disputes about the reasonableness of his sentence, and (3) assorted disputes about his sentence and restitution obligations. We address each category in turn.

A.

Sabit claims the district court made two mistakes before the imposition of his sentence. First, he contends that the district court erred when it rejected the parties' plea agreement. Second, he contends that the district court interfered with his right to speak during the sentencing hearing.

*Plea Agreement*. District courts have broad discretion to reject plea agreements. *United States v. Moore*, 916 F.2d 1131, 1135 (6th Cir. 1990). But that discretion has limits—if a district court rejects a plea agreement, it must explain why. *See United States v. Cota-Luna*, 891 F.3d 639, 647–48 (6th Cir. 2018).

The district court did not err when it rejected the parties' plea agreement. Judges have an independent obligation to ensure that Rule 11(c)(1)(C) agreements stipulate to an appropriate sentence within the applicable Guideline range, or else justify any departure from the Guidelines. *See Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion). And when a judge thinks the agreed-upon terms unduly cabin his sentencing discretion, he can reject the agreement. *See In re Morgan*, 506 F.3d 705, 712 (9th Cir. 2007); *see also In re United States*, 503 F.3d 638, 641 (7th Cir. 2007) ("[A]lthough Fed. R. Crim. P. 11(c)(1)(C) allows the prosecutor and the defendant to agree on a sentence, Rule 11(c)(5) allows the judge to reject the bargain if the agreed sentence would be one the judge deems inappropriate."). That's what happened here. The district judge told the parties he had no categorical rule against Rule 11(c)(1)(C) agreements. But he couldn't accept *their* agreement because the stipulated sentence did not "adequately provide[] [him] with discretion to sentence given the facts of [Sabit's] case." R. 93, Pg. ID 1021. In short, the district judge appropriately exercised his discretion. Sabit offers us no reason to think otherwise.

*Allocution*.  By rule, a criminal defendant must have a chance to speak before the district court imposes its sentence (what lawyers often call an "allocution").  Fed. R. Crim. P. 32(i)(4)(A).  Sabit asserts that the district judge interfered with that procedural right.  How?  By saying that Sabit might not get credit for accepting responsibility if, during his allocution, he falsely denied or minimized his criminal conduct.

The district court didn't err.  Allocution allows defendants to present mitigating arguments—it's not a chance to dispute guilt.  *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004).  Nor does it guarantee defendants the chance to speak without consequences.  If defendants use their allocution to deny their criminal conduct, the judge may consider that fact when deciding whether to award the reduction for acceptance of responsibility.  *See* U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.1(A) (U.S. Sentencing Comm'n 2018).  The district court did not "chill" Sabit's right to speak by warning him about these consequences.  As the record shows, the district court imposed no restrictions on what Sabit could say or how long he could talk.  *See* R. 141, Pg. ID 2741–46.  So Sabit had ample opportunity to allocute.  *See Carter*, 355 F.3d at 926–27.

B.

Next, we consider Sabit's arguments about the reasonableness of his sentence.  He attacks the procedural and substantive reasonableness of his custodial sentence along with his lifelong term of supervised release.

*Custodial Sentence—Procedural Reasonableness*.  Sabit argues that his sentence is procedurally unreasonable because the district court did not address certain mitigating arguments.  For a sentence to be procedurally reasonable, the district judge must explain the reasons for its chosen sentence.  *See Gall v. United States*, 552 U.S. 38, 50 (2007).  A judge provides an adequate explanation when there's enough to show the appellate court that he "considered the parties'

arguments and ha[d] a reasoned basis" for the sentence. *Rita v. United States*, 551 U.S. 338, 356 (2007). Although a judge cannot ignore legitimate mitigating arguments, he "need not engage in a formulaic point-by-point refutation" of those arguments. *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018). Thus, appellate review should "focus less on what the transcript reveals that the court said and more on what the transcript reveals that the court did." *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010).

Sabit cannot show that the district court failed to consider his mitigating arguments. To fulfill its procedural duty, a district court must "conduct a meaningful sentencing hearing and truly consider the defendant's arguments." *Id.* That's exactly what the judge did here. After examining the parties' positions (including Sabit's mitigating arguments), the judge explained why Sabit deserved his sentence. While the district court didn't respond point by point to Sabit's sentencing memorandum, the transcript reveals that the court spent time and effort choosing a sentence. The court heard testimony from victims (more than a dozen of them), listened to arguments from both parties, allowed Sabit to speak, responded to one of Sabit's arguments, and discussed the relevant factors when announcing the sentence. We are satisfied that the district court considered Sabit's mitigating arguments and offered an adequate explanation for its sentence.

*Custodial Sentence—Substantive Reasonableness*. When choosing a sentence, district courts must consider the sentencing factors listed in 18 U.S.C. § 3553(a). These factors include: the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the sentencing range recommended by the Sentencing Guidelines, and the need to avoid unwarranted sentencing disparities between defendants with similar records found guilty of similar conduct. *Id.* These are the basic ingredients of sentencing decisions. So when a district judge ignores relevant § 3553(a)

factors or gives unreasonable weight to others, the sentence becomes substantively unreasonable. *United States v. Price*, 901 F.3d 746, 749 (6th Cir. 2018). "The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness. Instead, substantive unreasonableness is a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (cleaned up). When reviewing substantive-reasonableness challenges, we presume that sentences properly calculated in the Guidelines range (like Sabit's) are reasonable. *Price*, 901 F.3d at 749.

To overcome this presumption, Sabit points out two mistakes that, he contends, the district court made when weighing the § 3553(a) factors. First, he says that the district court focused too much on the nature of his criminal conduct. According to Sabit, the court should have paid more attention to the difficulties inherent in lower-back surgery and his accomplishments as a surgeon. Second, he says that the district court did not adequately consider the need to avoid sentencing disparities with similarly situated defendants. By Sabit's calculation, healthcare fraudsters like him usually spend about forty-seven months in prison. His sentence is almost two hundred months longer than that—a sentencing disparity which Sabit contends is unwarranted. Together, Sabit asserts these errors render his sentence substantively unreasonable.

To begin with, the district court didn't put undue emphasis on Sabit's criminal conduct. Sabit, unlike most doctors who commit healthcare fraud, tricked dozens of vulnerable and defenseless patients into getting sham surgeries. During these surgeries, Sabit would cut people open and either insert unnecessary medical devices or insert nothing despite telling the patient and insurer to the contrary. Many victims testified during sentencing about the pain—sometimes

permanent—that they endure because of what Sabit did. The district court could properly focus on this conduct when choosing the sentence.

Next, the district court did not (as Sabit claims) ignore the need to avoid unwarranted sentencing disparities. The Sentencing Commission contemplated avoidance of sentencing disparities when crafting the Guidelines. So when a district court correctly calculates and carefully reviews the Guidelines range, it considers the need to avoid sentencing disparities. *Gall*, 552 U.S. at 54. The district court did both those things here. That means it "necessarily gave significant weight and consideration" to this factor. *Id.* What's more, we know that the district court considered the unwarranted-disparities factor because the parties argued about it at the sentencing hearing. And the district court discussed comparable cases when imposing the sentence, showing that it considered and rejected Sabit's disparities argument. *See Parrish*, 915 F.3d at 1049. Thus, the sentence is not substantively unreasonable.

*Supervised Release*. Sabit next argues the district court erred when it sentenced him to a lifetime of supervised release. First, he says the district court didn't explain the basis for supervised release (which would be a procedural error). Second, he contends the district court erred in imposing a lifetime of supervised release when the term of supervised release for each healthcare-fraud count cannot exceed three years. Third, he says the district court improperly considered the § 3553(a) sentencing factors when imposing a lifetime of supervision (which would be a substantive error). Sabit didn't object below, so we review his procedural claim for plain error and his substantive claim for abuse of discretion. *See United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc); *United States v. Graham*, 622 F.3d 445, 464 (6th Cir. 2010).

Of course, the district court must explain why it is imposing the term of supervised release. *United States v. Solano-Rosales*, 781 F.3d 345, 351–52 (6th Cir. 2015). But it need not conduct a

separate analysis of the § 3553(a) factors for both the custodial sentence and the supervised release. *See, e.g.*, *United States v. Presto*, 498 F.3d 415, 418–19 (6th Cir. 2007). That means that the district court's discussion of the § 3553(a) factors for the custodial sentence can also count as an explanation for the supervised release.

The district court didn't commit procedural error (plain or otherwise) by omitting a separate justification for Sabit's term of supervised release. After recounting the facts underlying Sabit's conviction, the district court discussed the § 3553(a) factors *and then* handed down the sentence. That shows the district court took a holistic approach to justifying the sentence. And that holistic approach didn't lack an adequate explanation: the district court spoke at length about Sabit's "horrific criminal acts upon vulnerable and defenseless human beings" and then explained why the sentence was necessary (1) to protect the public and (2) to deter other criminal conduct. R. 141, Pg. ID 2763–64. Those justifications apply with equal force to both Sabit's lifetime of supervision and his custodial sentence. *See* 18 U.S.C. §§ 3553(a)(2)(B)–(C), 3583(c) (requiring courts to consider certain § 3553(a) factors when imposing a term of supervised release). That the district court didn't repeat itself after announcing the term of supervised release doesn't amount to procedural error—much less *plain* error. *See Solano-Rosales*, 781 F.3d at 352; *Presto*, 498 F.3d at 419.

While Sabit argues it is "plain error to impose lifetime supervised release for the pertinent *fraud* convictions" because the supervised-release term for the fraud conviction cannot be more than three years per count, Appellant Reply Br. at 23, that is not what the district court did. The court sentenced Sabit to a lifetime of supervised release on the controlled-substance count—not the healthcare-fraud convictions.

Nor did the district court commit substantive error. As Sabit sees it, the district court impermissibly considered the seriousness of his criminal offense when it decided to impose a lifetime of supervised release. True, that's not one of the enumerated factors the district court *must* consider when selecting a term of supervised release. *See* 18 U.S.C. § 3583(c). But that doesn't mean that it *may not* be considered. Our circuit has said the opposite—district courts are not forbidden from considering the seriousness of the offense so long as they consider the other factors enumerated in § 3583(c). *United States v. Lewis*, 498 F.3d 393, 398–400 (6th Cir. 2007). The district court satisfied its duty to explain the supervised release when it discussed deterrence and public safety. Even if the district court weighed the seriousness of his offense when imposing supervised release, Sabit cannot show his sentence is substantively unreasonable.

Further, the district court did not err in imposing a lifetime of supervised release for writing one prescription for a controlled substance in violation of 21 U.S.C. § 841(a)(1). The court discussed Sabit's history and characteristics of lying to and harming patients and the government, the need to deter criminal conduct, and the need to protect the public from further crimes committed by Sabit. Also, this term of supervised release is within the guideline range for Sabit's § 841(a)(1) conviction. Although the lifetime of supervised release attaches solely to Sabit's § 841(a)(1) conviction, the district court properly took into account the broad factors it was required to consider under 18 U.S.C. § 3583(c). The district court did not abuse its discretion in reaching the conclusion that a lifetime of supervised release was the proper term based on these factors.

C.

We now turn to Sabit's final two arguments. He argues that the district court (1) relied on provisions in the Sentencing Guidelines that are unconstitutionally vague and (2) awarded an excessive amount of restitution.

*Vagueness*. The district court increased Sabit's offense level under the Guidelines because he caused substantial financial hardship to twenty-five or more victims. U.S.S.G. § 2B1.1(b)(2)(C). Sabit says that provision is unconstitutionally vague because it offers no guidance about what conduct triggers the enhancement. But the "advisory Guidelines are not subject to vagueness challenges under the Due Process Clause[.]" *Beckles v. United States*, 137 S. Ct. 886, 890 (2017). So Sabit's vagueness argument fails at the outset.

*Restitution*. The Mandatory Victim Restitution Act requires Sabit to compensate his victims for the full amount of their losses. 18 U.S.C. §§ 3663A(a)(1), 3664(f)(1)(A); *see United States v. Hunt*, 521 F.3d 636, 648–49 (6th Cir. 2008). The statute, in turn, defines "victim" as someone "directly and proximately harmed as a result of the commission of an offense[.]" 18 U.S.C. § 3663A(a)(2). If the defendant disputes restitution, the government must prove the amount of loss by a preponderance of the evidence. *Id.* § 3664(e).

The district court determined that Sabit should pay almost two million dollars in restitution—some belongs to the government, some belongs to private insurers, and the rest belongs to his patients. As best we can tell, Sabit argues that the district court erred in two ways.

First, Sabit contends that the district court shouldn't have ordered him to fully reimburse Medicare payments the government issued during the healthcare-fraud scheme. Sabit and his co-conspirators submitted false or fraudulent Medicare claims. By falsely certifying that he complied with the relevant Medicare laws and regulations, Sabit tricked the government into paying

$1,568,622 in fraudulent claims. Because Sabit's fraud caused the government to lose that money, he now must repay that same amount. *See, e.g.*, *Hunt*, 521 F.3d at 648 ("Because Medicare and Blue Cross/Blue Shield would not have paid for the tests but for the presence of Hunt's signature on the orders, Hunt was the direct and proximate cause of the harm suffered by those entities.").

Second, Sabit asserts that the district court erred by relying on inaccurate spreadsheets. But the district court didn't base its restitution award on spreadsheets. Instead, it held two different restitution hearings to resolve disputes about the amount owed to individual patients and private insurers. At these hearings, Sabit did not contest the restitution awards for most of the victims. And for the awards Sabit did contest, the district court overruled his objections based on evidence that the government submitted from medical experts. Because Sabit hasn't told us which awards he thinks were erroneous (or *why* they're erroneous), we cannot find error.

\*\*\*

The district court did not commit reversible error during Sabit's criminal proceedings. Nor did it commit reversible error when imposing Sabit's sentence. Thus, we affirm.