NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0458n.06

No. 21-5374

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td></td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td>JERROD JENNINGS,</td><td>)</td><td>COURT FOR THE WESTERN</td></tr>
<tr><td></td><td>)</td><td>DISTRICT OF TENNESSEE</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Oct 07, 2021
DEBORAH S. HUNT, Clerk

BEFORE: SILER, KETHLEDGE, and BUSH, Circuit Judges.

BUSH, Circuit Judge. After his guilty plea, appellant Jerrod Jennings was sentenced in April 2021 for possession of methamphetamine ("meth") with intent to distribute. *See* 21 U.S.C. § 841(a)(1). During his arrest for that offense, he resisted officers, tried to conceal evidence, reached for a handgun, and was tased twice. Along with the weapon, officers also discovered Suboxone, morphine, marijuana, crack cocaine, and a baggie of nearly pure meth in Jennings's possession. Despite all that, Jennings eventually received a sentence for his § 841 violation thirty months *below* the low end of his guidelines range. But even *that* sentence was unreasonable, he says, given his view that the relevant guidelines are not sufficiently grounded in empirical evidence or otherwise should not apply to him. We disagree. The district court acted well within its discretion when it selected the sentence that it did. So we affirm.

**I.**

In February 2017, officers deployed a confidential informant to buy about a gram of crack cocaine from Jennings. After that sale, they secured a warrant to arrest him on a drug-trafficking charge. When officers arrived at Jennings's home, its front door was slightly open. They could see Jennings inside. After they had announced themselves, Jennings slammed the door shut and ran further into the home. He smashed a window and tossed a plastic baggie outside. Officers in pursuit found him hiding in a back bedroom. They ordered Jennings to show his hands, but he reached into a dresser drawer instead. Officers tased him twice, but it had little effect; Jennings was apparently high on meth. After subduing him, officers discovered a .40-caliber pistol in the drawer. They also found a scale, cash, Suboxone, morphine, marijuana, and crack cocaine throughout the house. The baggie that Jennings had tossed through the window turned out to contain 26.33 grams of meth at a purity of 96%.

Based on those facts, federal prosecutors obtained an indictment, and later a four-count superseding indictment, against Jennings. As part of a plea deal, prosecutors agreed to drop two of the counts, while Jennings agreed to plead guilty to the two that remained (Counts 1 and 4). Count 1 charged Jennings with "knowingly and intentionally possess[ing] with the intent to distribute 5 grams or more of actual methamphetamine," in violation of 21 U.S.C. § 841(a)(1). And Count 4 charged him with knowingly possessing a firearm to further a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Before sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR calculated Jennings's base offense level as 26, which it adjusted downward to 23 because Jennings had accepted responsibility. It also calculated that he had a criminal history of Category IV. His guidelines range for the § 841 offense was thus seventy to eighty-seven

months' imprisonment. And for the firearms offense, § 924 mandates that the resultant sentence of 60 months be imposed consecutively. 18 U.S.C. § 924(c)(1)(D)(ii).

Jennings objected in a sentencing memorandum to the PSR's guidelines calculation for his § 841 offense. Because of the perceived correlation between a drug's purity and a dealer's rank in the distribution chain, the guidelines impose a 10:1 disparity between offenses involving "actual meth"—meth with a purity of at least 80%—versus offenses involving "mixed" meth of a lesser purity. *See* U.S.S.G. § 2D1.1. Thus, since Jennings's meth tested at a purity of 96%, he was treated as if he had possessed a weight of "mixed" meth ten times higher. (And conversely, had his meth been treated as "mixed," his base offense level would have been much lower.) *See* U.S.S.G. § 2D1.1(c)(11). Jennings first attacked that disparity's rationale as lacking empirical support. Because *all* meth has become purer in recent years, he said, the disparity has become overinclusive. It ensnares even rank-and-file dealers low in the distribution chain. And second, he argued that the circumstances of his own offense proved that he did not merit the enhancement: That he had less than an ounce of meth at the time of his arrest showed that he did not enjoy "a prominent role in the criminal enterprise." So he urged the district court to ignore the guidelines and impose a lesser sentence. His counsel reiterated those points at sentencing.

In response, the government highlighted several aspects of Jennings's case that undercut the notion that the guidelines were somehow inappropriate. While apparently high on meth, Jennings had resisted officers, reached for a gun, and shrugged off two deployments from a Taser. The danger of that situation, in the government's view, "reflects the dangerousness of the drug."

After considering the parties' arguments, the district judge sided with the government. He explained that he was aware of the recent push for an alternative sentencing regime for meth offenses. But meth, in his view, remains "a serious . . . problem in the Western District of

Tennessee." Indeed, and just as Jennings had pointed out, many more meth offenses now involve high-purity meth. Yet the district judge did not think the increasing severity of Tennessee's meth problem a reason to *reduce* the penalties associated with such offenses. The district judge thus elected to follow the guidelines, finding that they imposed no unwarranted disparity in Jennings's particular case.

Apart from those issues, the government also moved for a downward departure under U.S.S.G. § 5K1.1 for the substantial assistance that Jennings had lent to law enforcement after his arrest. Given that cooperation, the government recommended that Jennings receive a shorter term of incarceration for the § 841 offense. The district court agreed, departing downward from Jennings's seventy-to-eighty-seven-month guidelines range to impose only 40 months' imprisonment for the § 841 conviction. Together with the § 924 conviction, then, Jennings received 100 months' incarceration, followed by terms of supervised release.

Now on appeal, Jennings reiterates his two arguments about § 2D1.1—the same points the district court rejected at sentencing. First, he says, the guidelines' general 10:1 disparity between "actual" and "mixed" meth "lack[s] empirical support." And second, in his view, even if the disparity were "meticulously supported by empirical evidence," it should not apply to him. Once again, he argues that he does not "fit the profile of someone farther up the [distribution] chain." And had the district court accepted those arguments, he says, he might have received an even shorter sentence. The government responds that "[w]hile district courts are free to disagree with the sentencing guidelines on policy grounds, they are not *required* to do so." Thus, it could not have been an abuse of discretion for the district court to simply follow the guidelines. We consider those arguments below.

**II.**

We review sentences for both procedural and substantive reasonableness. "The first requirement"—procedural reasonableness—"is a process-driven one." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). The district court "must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). If the appellant objected to procedural reasonableness below, then we review for abuse of discretion. *United States v. Brooks*, 628 F.3d 791, 797 (6th Cir. 2011). If he did not, then we review for plain error. *Id.*; *see also United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015).

"A claim that a sentence is substantively unreasonable," by contrast, "is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *Rayyan*, 885 F.3d at 442; *see also United States v. Lee*, 974 F.3d 670, 676 (6th Cir. 2020) ("[A] defendant's sentence is substantively unreasonable if it is too long."). And a "sentence is too long when it is 'greater than necessary' to achieve the sentencing goals," like punishment and deterrence, "set forth in 18 U.S.C. § 3553(a)(2)." *Lee*, 974 F.3d at 676; *see* 18 U.S.C. § 3553(a)(2)(A)–(D). Our review on these issues is "highly deferential," *Rayyan*, 885 F.3d at 442, likewise comprising abuse of discretion for objections preserved and plain error for those not. In this case especially, our review is deferential. For while a guidelines sentence is itself presumed reasonable, *Brooks*, 628 F.3d at 796, Jennings received a sentence below even the guidelines.

**III.**

We note at the outset some confusion about the nature of Jennings's claims. When detailing the standard of review, he describes his "challenge [as] to the *procedural* reasonableness" of his sentence. But his central grievance, he says, is that his "sentence was greater than necessary to achieve the goals of sentencing." That is a point about *substantive* reasonableness. And the government, for its part, views substantive reasonableness as the core issue here. We agree. Jennings's quarrel with the district court is not "process-driven." *Cf. Rayyan*, 885 F.3d at 440. Instead, it is a criticism that the punishment does not fit the crime—that his sentence was substantively unwarranted. He raised *that* point below, so we review for abuse of discretion. We will reverse only if the district court had no reasonable basis for finding Jennings's sentence consistent with § 3553(a).

A. Jennings's General Criticism of U.S.S.G. § 2D1.1

Jennings opens his brief with his macro-level criticism of the disparate treatment of actual and "mixed" meth in § 2D1.1. The relevant comment in the guidelines, he notes, suggests that purity "is probative of the defendant's role or position in the chain of distribution." But Jennings claims that neither "empirical data from the Sentencing Commission" nor "academic literature" can "justify this ratio." Rather, as meth becomes purer and purer, § 2D1.1 becomes more and more overinclusive. He also points to a handful of district courts in the Sixth Circuit and elsewhere that have found similar arguments persuasive. Some have even instituted bespoke sentencing regimes for federal meth offenses "until the Guidelines are re-evaluated and adjusted."

The basic flaw with Jennings's "macro" criticism is that it does nothing to show that the district court abused its discretion. True, "[a] district court may . . . disagree with a Guideline for policy reasons and *may* reject the Guidelines range based on that disagreement." *Brooks*, 628 F.3d

at 799 (citations omitted). But "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *Id.* at 800. Indeed, "the mere fact that a sentencing court has the *discretion* to disagree with the guidelines on policy grounds does not mean that it is *required* to do so." *United States v. Lynde*, 926 F.3d 275, 281 (6th Cir. 2019) (emphasis added) (quoting *United States v. Souders*, 747 F. App'x 269, 278 (6th Cir. 2018)). And, as we have explained, "that is true no matter how persuasive an appellate court finds the defendant's policy arguments." *Id.* (quoting *Souders*, 747 F. App'x at 278). Unsurprisingly, we have rejected "empirical" attacks on the guidelines many times before, finding no abuse of discretion when district courts simply apply them as written. *See, e.g.*, *id.* at 278 (rejecting a defendant's argument that the relevant guideline was invalid since it "arose from . . . not enough empirical research by the Sentencing Commission"); *see also Brooks*, 628 F.3d at 793 (rejecting a similar claim that a guideline was "not based on empirical data"). We see no reason here to diverge from our usual principles.

B. Jennings's Claim that U.S.S.G. § 2D1.1 is Invalid as Applied to Him

Jennings's "micro" criticism that § 2D1.1 should not apply in his specific case is just his "macro" criticism warmed over. He thinks § 2D1.1 is overinclusive, and he also thinks that his own case is an example of that over-inclusion. But as noted, a district court does not abuse its discretion when it finds the defendant's policy arguments against the guidelines unpersuasive and applies the guidelines as written. *See Brooks*, 628 F.3d at 799–800; *see also Lynde*, 926 F.3d at 281. For that matter, Jennings's specific conduct preceding his arrest gave the district court plenty of reasons to think Jennings did not merit a special exemption. Yet Jennings still received a well-below-guidelines sentence given the government's § 5K1.1 motion. So it is unclear why Jennings

thinks the facts of his particular case support his disagreement with the guidelines.  Certainly, the district court did not abuse its discretion when, in light of those facts, it rejected Jennings's objections.

**IV.**

The district court correctly calculated Jennings's guidelines range, respectfully considered Jennings's policy arguments against it, found them unpersuasive, and applied the guidelines as written.  That is not an abuse of discretion.  AFFIRMED.