RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0334p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

> No. 25-3229

*v.*

DONALD SIMS,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:18-cr-00113-1—John R. Adams, District Judge.

Decided and Filed: December 10, 2025

Before: BOGGS, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Scott J. Friedman, LAW OFFICE OF SCOTT J. FRIEDMAN, Cleveland, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

READLER, Circuit Judge. Donald Sims violated the terms of his supervised release. He challenges the resulting above-Guidelines sentence that the district court imposed as procedurally and substantively unreasonable. We disagree and affirm the district court.

I.

Donald Sims has a history of run-ins with the law. Among his past offenses are two federal convictions for possessing a firearm as a felon. The sentences for both offenses included periods of supervised release, provisions he struggled to honor, as today's case reflects.

By way of background, Sims's first federal conviction, which dates back to 2010, stemmed from a traffic stop that uncovered a loaded firearm and marijuana. For that offense, the district court sentenced Sims to 34 months in prison and three years of supervised release. Sims later violated the terms of his supervised release by testing positive for marijuana and absconding, leading the district court to revoke his supervised release and impose a ten-month prison term.

Sims's second federal conviction—the one underlying his current term of supervised release—followed a 2016 incident in which he sold a pistol and loaded magazine to a confidential informant. He pleaded guilty to being a felon in possession of a firearm and ammunition, and the district court imposed a 48-month sentence, again with a three-year term of supervised release.

Sims was released from prison in August 2021, at which point his period of supervised release commenced. By late 2023, Sims was again struggling to comply with the terms of his release. During a hearing, Sims admitted to twice testing positive for marijuana. The district court allowed Sims to remain on supervision because he was in intensive outpatient treatment and seeking custody of his ten-year-old son but warned him against continued drug use.

At least initially, things seemed to be looking up for Sims. His drug tests were negative, and he was employed. For these reasons, the district court continued Sims's supervision during an April 2024 hearing but again warned him that any renewed drug use would jeopardize his progress.

The district court's warning went unheeded. Just a month later, police stopped Sims's car after it crossed the center line. From Sims's vehicle, officers recovered 2.4 grams of cocaine,

a digital scale, and a measuring scoop.  Sims later pleaded guilty in state court to felony cocaine possession and received a nine-month sentence.

In light of these developments, Sims's probation officer filed a superseding violation report citing the following supervised-release violations:  unauthorized drug use, possession of cocaine, and failure to report police contact.  At his revocation hearing, Sims admitted to the violations, but denied that the cocaine was his own.  Noting that Sims had pleaded guilty in state court and had refused an earlier police search, the district court found Sims's denial not credible.  The district court acknowledged Sims's improvements but expressed concern that the cocaine was an "escalation" of Sims's bad behavior, noting Sims's lengthy pattern of supervision violations.  R. 64, PageID 293.  Regarding Sims's ongoing custody dispute, the district court emphasized that a "good parent does not sell cocaine or deal with cocaine or have cocaine in their system." *Id.*

The Guidelines range for Sims's supervised-release violations was 7 to 13 months.  Defense counsel asked for a nine-month sentence to match the state possession sentence, while the government recommended a 12-month consecutive sentence.  The district court, however, imposed an 18-month sentence (to run consecutive to Sims's state sentence)—five months above the Guidelines range.  The upward variance, the district court hoped, would "send the appropriate message" that "drug trafficking is not going to be condoned . . . nor is a failure to report to [probation]." *Id.*, PageID 293–95.  Such a variance was necessary because prior leniency, the district court explained, "apparently had no effect" on Sims's behavior. *Id.*, PageID 294.  Sims's counsel objected "to the upward variance," but made no other specific objection. *Id.*, PageID 294.  The district court noted the objection but overruled it, leading to Sims's appeal.

II.

A. We address Sims's procedural arguments first.  A sentence is procedurally unreasonable if the district court selects it "based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).  Considering an impermissible factor is also a procedural error. *United States v. Richardson*, 843 F. App'x 775, 777 (6th Cir.

2021). It is unclear if Sims adequately preserved his challenges in district court given that he did not identify a particular procedural defect when objecting. *See United States v. Vaughn*, 119 F.4th 1084, 1089 (6th Cir. 2024) (a "party must object with a reasonable degree of specificity" to preserve an error for our review (citation modified)). We need not resolve this debate, as Sims identifies no error, let alone a plain error to justify reversal.

Sims first contends that the district court erred by considering the length of Sims's state-court sentence when revoking his federal supervised release. The district court, Sims says, never explained "how this consideration is relevant to any of the permissible sentencing factors enumerated in [18 U.S.C.] § 3583(e)." Reply Br. 3. Yet when it comes to offering explanations, Sims has his own deficiencies: He fails to develop why the district court was not allowed to acknowledge his state-court sentence. Much to the contrary, the length of Sims's state sentence was plainly relevant, both because his state cocaine possession offense formed the basis of the supervised-release violation, and because the district court was required under U.S. Sentencing Guidelines Manual § 7B1.3(f) to consider how the federal term would interact with its state counterpart.

Sims counters by invoking the Supreme Court's recent holding in *Esteras v. United States*, 145 S. Ct. 2031 (2025). Yet nothing in that decision alters our conclusion. *Esteras* bars courts from considering the "seriousness of the [underlying conviction]" or other retributive factors listed in 18 U.S.C. § 3553(a)(2)(A) concerning the original offense when revoking supervised release. 145 S. Ct. at 2040. But it does not prohibit a district court from considering the seriousness of the supervised-release violation or a related state-court sentence. *United States v. Patterson*, 158 F.4th 700, 702 (6th Cir. 2025) (explaining that *Esteras* bars reliance on the seriousness of the original crime but allows consideration of the conduct underlying the release violation). In fact, § 3583 expressly allows for consideration of § 3553(a)(2)(B) and (C), which includes deterring future crime and protecting the public from further crimes of the defendant. Those considerations, in assessing the need for incarceration of a defendant, permit a district court to consider whether a federal sentence is necessary because of an inadequate state sentence.

Sims next argues that the district court erred by finding that Sims trafficked cocaine when he pleaded guilty in state court only to possession.  Again, we disagree.  At a revocation hearing, a district court may find facts by a preponderance of the evidence and may consider any reliable information in fashioning an appropriate sentence.  *See United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013); *United States v. Rankin*, 929 F.3d 399, 407 (6th Cir. 2019).  On that front, the district court had before it evidence that officers recovered 2.4 grams of cocaine, a digital scale, and a measuring scoop from Sims's car—items that suggested more than personal use.  R. 45, PageID 236–37.  On this record, the district court could reasonably conclude that Sims's conduct was indicative of trafficking.  *See United States v. Massey*, 758 F. App'x 455, 461 (6th Cir. 2018) (per curiam) ("[I]ntent to distribute may be inferred from . . . the presence of drug distribution paraphernalia, including scales . . . ." (citation modified)).  Thus, no clear (let alone plain) error occurred.

Finally, Sims argues that the district court did not adequately justify an above-Guidelines sentence.  To that end, a district court meets its procedural obligations when it "addresses the factors from 18 U.S.C. § 3553(a) that are relevant" to its decision.  *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015).  The district court here expressly tied its variance to Sims's repeated failures to comply with conditions of supervision and the need for increased deterrence.  Sims, the district court explained, "ha[d] not learned," "[did] not appear to want to change his behavior," and "apparently had no[t]" been deterred by his previous ten-month revocation sentence.  R. 64, PageID 293–94.  Regrettably, in the district court's mind, Sims had "been given numerous opportunities by the court and by his probation officer to try to address some of these issues," yet "has not committed to modifying his behavior."  *Id.*, PageID 292.  Taken together, those remarks reflected a proper focus on deterrence, not any forbidden factor under § 3553(a)(2)(B).

The district court also walked through the conduct and history supporting its conclusion, including Sims's pattern of supervised-release violations, the circumstances of his cocaine violation, *id.*, PageID 290, and his continued recidivism after the previous revocation and warnings, *id.*, PageID 293–94.  *See United States v. Taylor*, No. 24-5578, 2025 WL 848107, at *3 (6th Cir. Mar. 18, 2025) (repeated violations distinguish a case from the average case).

Although the district court did not recite each factor, it sufficiently explained its reasoning. "[W]e do not require a 'ritual incantation' of the Guidelines" or statutory factors. *United States v. Vines*, 799 F. App'x 371, 375 (6th Cir. 2020) (quoting *United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005)).

B. Sims also raises a substantive challenge to his 18-month sentence. In essence, such a challenge is a claim that his "sentence is too long" or that the district court "placed too much weight on some of the § 3553(a) factors and too little on others in sentencing" Sims. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Where, as here, the district court imposes an above-Guidelines sentence, we ask whether the justification is "sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 38. This is a highly deferential standard: Defendants face a "high bar" in such challenges because sentencing is inherently discretionary, and we do not micromanage how district courts weigh the relevant factors. *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019); *United States v. Devaney*, 992 F.2d 75, 76–77 (6th Cir. 1993).

Sims quarrels with the way the district court weighed the § 3553(a) factors. He points to his progress with therapeutic treatment and that he is suffering abnormally intense stressors. But the district court considered those factors and decided that they did not outweigh his history of poor performance on supervision. As the district court emphasized, Sims had "been on supervised release before and performed miserably." R. 64, PageID 288. Further, Sims's illicit-substance use was "a recurring problem." *Id.* Sims does not (and cannot) dispute that the district court may consider these factors, *see, e.g.*, *United States v. Childress*, 468 F. App'x 471, 478 (6th Cir. 2012), or that it was entitled to give them greater weight than his effort at rehabilitation. *See, e.g.*, *United States v. Perez-Rodriguez*, 960 F.3d 748, 753–54 (6th Cir. 2020).

Sims also contends that the district court placed too much weight on his cocaine possession in concluding that Sim was trafficking drugs. But for reasons already described, the district court could reasonably find that Sims was trafficking. And, in any event, his possession of cocaine was an "escalation" that warranted a stricter sentence. R. 64, PageID 293. Given Sims's repeated failures and the ineffectiveness of prior lenience, an extra five months for

cocaine possession while on supervised released is not "too long." *Rayyan*, 885 F.3d at 442. The district court was well within its discretion to impose a five-month upward variance.

\* \* \* \* \*

We affirm.