**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0953n.06

No. 12-5396

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 05, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| CARLOS FUNZIE, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| Defendant - Appellant. | ) | DISTRICT OF TENNESSEE |
| | ) | |

---

**BEFORE:  GIBBONS and WHITE, Circuit Judges; GREER, District Judge.**[*]

**HELENE N. WHITE, Circuit Judge.**  Defendant Carlos Funzie appeals his conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  He challenges the district court's denial of his motions for acquittal and a new trial based on the sufficiency and weight of the evidence, limitation of defense counsel's cross-examination of a government witness and exclusion of a defense witness's testimony on hearsay grounds, and handling of voir dire.  He also argues that a remark during the prosecutor's closing statement was improper.  We AFFIRM.

**I.**

**A.**

On December 22, 2008, Bianca Tolbert reported to the Memphis police department that she had an altercation with Funzie (her then-boyfriend, with whom she had two children) outside his

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

aunt's home, during which Funzie tried to force her out of her car by grabbing her hair. The police arrived at the scene but did not apprehend Funzie at the time because he left before they arrived.

Tolbert returned to her apartment later that night, where she found the words "I'm going to get you" written in red lipstick on the bathroom mirror. She suspected that Funzie had written them because he made this statement to her earlier that day. Tolbert called the police a second time, and two officers arrived, took a report, and left. Soon after their departure, Funzie attempted to force his way into Tolbert's apartment, and Tolbert again called the police. Between this call and the return of the police, Funzie kicked in the front door, entered the apartment, and began "hollering and yelling" at Tolbert. During the argument, Tolbert saw a black handle sticking out of Funzie's front jacket pocket, which she suspected was part of a gun. Before the police arrived, Funzie went into Tolbert's bedroom; when Funzie returned to the living room, Tolbert no longer saw the black handle.

When the police arrived, they heard a male yelling from inside the apartment and noticed that the front door had been "kicked in." The police knocked on the door. According to Tolbert, Funzie answered the door and the officers entered the apartment.[1] Tolbert told the police that she suspected that Funzie had left a gun in her bedroom. An officer searched the bedroom and found a loaded, .22 caliber revolver with a black handle in a laundry basket. The police arrested Funzie.

**B.**

---

[1]According to an officer's testimony, Tolbert answered the door.

2

In June 2009, a federal grand jury charged Funzie with being a felon in possession of a firearm based on the December 2008 incident. Funzie proceeded to a jury trial and moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 after the government rested its case. The district court denied the motion. Defense counsel then called as a witness defense investigator Flavius Herbert Brewer, and asked him about a statement Tolbert made to Brewer regarding the December 2008 incident. On the government's objection, the district court excluded the testimony as inadmissible hearsay. Defense counsel renewed his Rule 29 motion and the district court reserved ruling until after the jury verdict.

The jury found Funzie guilty. Funzie then supplemented his Rule 29 motion with a memorandum of law, arguing that the government failed to sufficiently prove that he possessed a firearm. He also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, raising the remaining grounds he advances on appeal. The district court denied both motions. The district court imposed a fifty-month prison term and three-year term of post-release supervision. Funzie timely appealed.

## II.

### A.

#### 1.      Rule 29 Motion

We review de novo the district court's denial of Funzie's Rule 29 motion for a judgment of acquittal to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Ramirez,*

3

635 F.3d 249, 255 (6th Cir. 2011). Under this standard, we do not independently weigh the evidence, judge the credibility of witnesses, or substitute our judgment for that of the jury. *Ramirez*, 635 F.3d at 255–56.

"To obtain a conviction under § 922(g)(1), the government must prove that the defendant had a previous felony conviction, that the defendant knowingly possessed the firearm specified in the indictment, and that the firearm traveled in or affected interstate commerce." *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010) (internal quotation marks omitted). Funzie stipulated that he had a prior felony conviction and does not challenge the adequacy of government's evidence that the firearm traveled in interstate commerce. Rather, he argues that the government failed to sufficiently prove that he possessed the firearm.

Tolbert testified that she saw a black handle sticking out of Funzie's front jacket pocket when they were engaged in an argument at her apartment, and she suspected it was a gun. Before the police arrived, Funzie went into Tolbert's bedroom; when he returned, Tolbert no longer saw the black handle. The police arrived and, upon searching the bedroom, found a revolver with a black handle in a laundry basket. Tolbert testified that the gun found by the police was not her gun.

To be sure, Tolbert could not definitively say whether Funzie possessed the firearm because she saw only what she perceived to be the handle. Further, fingerprints were not recovered from the firearm. However, "the government may . . . prove possession of a firearm by circumstantial evidence," and "we will not overturn a felon-in-possession-of-a-firearm conviction 'merely because [the jury] had to draw reasonable inferences to find [the defendant] guilty.'" *United States v. Kimbrel*, 532 F.3d 461, 465 (6th Cir. 2008) (alterations in original) (quoting *United States v. Arnold*,

4

486 F.3d 177, 181 (6th Cir. 2007) (en banc)); *see United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) ("Circumstantial evidence . . . need not remove every reasonable hypothesis except that of guilt." (internal quotation marks omitted)). Here, the government introduced sufficient, circumstantial proof of actual possession through Tolbert's testimony and the fact that the police recovered the firearm in the bedroom where Tolbert suspected Funzie had placed it. *See United States v. Lewis*, 397 F. App'x 226, 227–28 (7th Cir. 2010) (order) (concluding that actual possession was proven by circumstantial evidence, even though no witness actually saw the defendant with the gun and no fingerprints were recovered); *United States v. Vasquez*, 82 F.3d 574, 578 (2d Cir. 1996) (same); *cf. United States v. Hibbler*, 193 F. App'x 445, 450 (6th Cir. 2006) ("[T]here is no requirement that fingerprints be present on a firearm in order to support a verdict that the defendant possessed it."). The defense theory that the black handle was a cell phone rather than a gun and that someone else could have placed the firearm in the laundry basket did not preclude the jury from drawing the reasonable inference that Funzie possessed the firearm during his argument with Tolbert and then tried to hide it in the laundry basket before the police arrived. Accordingly, we reject Funzie's challenge to the denial of his Rule 29 motion.

### 2.    Rule 33 Motion

Funzie also challenges the district court's denial of his Rule 33 motion for a new trial in which Funzie contended that the jury verdict was against the manifest weight of the evidence. A Rule 33 motion on weight-of-the-evidence grounds may be granted "only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 592–93 (6th Cir. 2007) (internal quotation marks omitted). "[The] district

[court], in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.* at 593. We review the district court's decision for "a clear and manifest abuse of discretion," *id.*, and, unlike the district court, do not assess witness credibility or reweigh the evidence. *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).

That the evidence arguably points to a hypothesis other than guilt does not render the verdict against the greater weight of the evidence. The district court did not commit a clear abuse of discretion in denying Funzie's Rule 33 motion given that Tolbert testified that she saw a black handle sticking out of Funzie's pocket that she believed was a gun and that the police recovered the loaded firearm from the very room where she suspected Funzie had placed it.[2]

**B.**

We review the district court's evidentiary rulings for an abuse of discretion, but review de novo its legal conclusions underlying such rulings. *United States v. Martinez*, 588 F.3d 301, 309 (6th Cir. 2009). The district court's discretion, however, must be consistent with "the Confrontation Clause's functional purpose in ensuring a defendant an opportunity for cross-examination," *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987), which "requires a defendant to have some

---

[2]To the extent that Funzie asserts that the jury verdict was based on impermissible hearsay testimony, we observe that the district court instructed the jury that the reliable proof in evidence pertained to what the witness saw and observed, not what someone said to the witness, and that the jury had to draw that distinction in assessing the evidence. It is presumed that the jury followed these instructions and Funzie provides no basis to show otherwise. *See United States v. Cunningham*, 679 F.3d 355, 383 (6th Cir. 2012).

opportunity to show bias on the part of a prosecution witness." *United States v. Abel*, 469 U.S. 45, 50 (1984).

## 1.     Cross-Examination of Tolbert

Funzie argues that the district court erred by sustaining the government's objection to "a portion of the defense's cross-examination of Bianca Tolbert" regarding the sequence of events on the night of the December 2008 incident.  A review of the record suggests that this issue relates to defense counsel's attempt during Tolbert's cross-examination to "go back to the sequence of events," in order to question whether she went anywhere after taking her cousin, Chanel, to a T-Mobile store but before returning to Tolbert's apartment.  The district court permitted defense counsel to ask Tolbert one question to rule out whether she made any other stops:

> Q.     Did you and Chanel and your baby make any other stops after you left the T Mobile store before you got back to your home at 3700 Pershing?
>
> A.     No.

PID 475–76.  Before this exchange, defense counsel elicited from Tolbert that:  she had argued with Funzie at his aunt's house about "him getting out of [her] car so [she could] take Chanel to T Mobile"; she did not pick up anybody else between letting Funzie out of the car at his aunt's house and the time she arrived at T-Mobile; she did not go into T-Mobile with Chanel; and, after Chanel came out of T-Mobile and got back into the car, they both went to Tolbert's apartment.

"A criminal defendant has the constitutional right to confront the witnesses against him, but this right is not absolute." *United States v. Cunningham*, 679 F.3d 355, 384 (6th Cir. 2012) (internal quotation marks omitted).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause

is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). As the exchange reveals, the district court gave defense counsel the opportunity to cross-examine Tolbert about the sequence of events on the night of the incident. Once Tolbert answered, there was little probative value in permitting the defense to explore further questions on the same topic.

Next, Funzie conclusorily asserts (without any reference to the record) that "[c]utting a defendant off from pursuing any course of cross examination that has any kind of potential for exposing inconsistencies, bias, motive to lie, extreme emotions or anger, secret purpose, or anything else which might go toward showing reasonable doubt is violative of a defendant's Confrontation Clause right[.]"[3] However, the defense explored Tolbert's potential bias and inconsistencies. Tolbert conceded on cross-examination that: 1) she was angry at Funzie when she called the police; 2) she loved Funzie, but Funzie was jealous because another man was paying attention to her, and she wanted her freedom and was glad someone else was paying attention to her; 3) their argument was part of a "lover's spat"; 4) she told the defense investigator that she wanted the police to arrest Funzie the night of the incident because she was mad at him; 5) she wanted Funzie to go to jail that night; and 6) she was "sometimes" willing to say or do anything to get back at Funzie or hurt him

---

[3]A review of the record reveals that the district court sustained the government's objection to defense counsel's question to Tolbert regarding whether it was "true" that she had told Brewer in July 2011 that it was possible that the gun "could have been placed in the laundry basket." Nevertheless, defense counsel elicited a concession from Tolbert that it was possible that the gun could have been placed in the basket by someone other than Funzie.

because of her feelings. Tolbert also conceded, among other things, that a portion of her statement to the police—that Funzie had "busted her lip" earlier at his aunt's house—was inaccurate. In closing argument, defense counsel argued (without objection from the government) that the December 2008 incident was "a lover's spat" and "a dispute over a child," Tolbert admitted that she was interested in someone else at the time of the incident, she "wanted to get rid" of Funzie and "move on," she admitted that she was "so mad she wanted Carlos Funzie to go to jail," and she was "willing to do anything or say anything to get back at him." And, as defense counsel argued to the jury, "that's exactly what happened" and the "only reason" Funzie was arrested.

Because the district court's limit on cross-examination was reasonable, and Funzie was able to question Tolbert about her possible bias and elicit enough information to allow the jury to fairly assess the defense theory, the district court did not abuse its discretion or infringe on Funzie's confrontation rights. *Cunningham*, 679 F.3d at 384; *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989).

**2.      Exclusion of Brewer's Testimony Regarding Tolbert's Out-of-Court Statement**

Funzie also challenges the exclusion of Brewer's testimony regarding what Tolbert told him about the December 2008 incident in July 2011, during the course of Brewer's investigation for the defense. After establishing that the defense retained Brewer to investigate the case, the following exchange occurred:

> Q.      Mr. Brewer, I want to direct your attention to some specific issues from your conversations with Bianca Tolbert.
>
> Did Ms. Tolbert on the night of December 22nd of 2008 in her apartment, did Ms. Tolbert tell you whether or not she saw Mr. Funzie with a gun?

[Prosecutor]: Objection. Calls for hearsay, your Honor.

PID 647.[4] Following a long side-bar discussion, the district court excluded Brewer's proffered testimony on hearsay grounds.

On appeal, Funzie does not argue that any hearsay exception under the Federal Rules of Evidence would permit the admission of Brewer's testimony regarding Tolbert's out-of-court statement. Rather, he contends that it was permissible to impeach Tolbert with extrinsic evidence (i.e., her statement to Brewer) to show bias or motive, citing *United States v. Abel*, 469 U.S. 45 (1984).

Under *Abel* and our precedents, evidence showing witness bias is probative in assessing witness credibility, but its admission is subject to the district court's discretion on matters such as relevance, whether it has a proper foundation, and whether the questions are asked in the proper form. *See, e.g.*, *Abel*, 469 U.S. at 50–51, 55–56; *United States v. Jackson-Randolph*, 282 F.3d 369, 383 (6th Cir. 2002); *United States v. Phillips*, 888 F.2d 38, 41–42 (6th Cir. 1989); *Smith v. United States*, 283 F.2d 16, 20–21 (6th Cir. 1960). We find it unnecessary to analyze whether the district court's rulings regarding Brewer's testimony were correct. Even assuming arguendo that the district court erred in excluding the testimony, we will grant a new trial "only if we are firmly convinced of a mistake that affects [the defendant's] substantial rights and amounts to more than harmless error." *United States v. Baldwin*, 418 F.3d 575, 579 (6th Cir. 2005) (internal quotation marks omitted); *see* Fed. R. Crim. P. 52(a). "[E]rrors in the exclusion of evidence may be cured by the

---

[4]Although defense counsel's question as posed suggests that Brewer spoke with Tolbert on the night of the incident, the record is clear that he spoke with her in 2011. PID 646–47, 661.

admission of other evidence of substantially the same nature," *United States v. Holloway*, 740 F.2d 1373, 1379 (6th Cir. 1984) (internal quotation marks omitted), and "[t]he exclusion of cumulative testimony does not impair the right to present a meaningful defense." *United States v. Blackwell*, 459 F.3d 739, 755 (6th Cir. 2006) (citation omitted).

The district court correctly reasoned and defense counsel conceded during the side-bar discussion that Tolbert had candidly offered her views during cross-examination about Funzie and acknowledged her motives in calling the police. As discussed supra, defense counsel elicited strong testimony from Tolbert regarding her desire to have Funzie put in jail and her willingness "to say or do anything to get back at him." Further, based on inferences from her testimony, defense counsel argued in closing that Tolbert had an ulterior motive to have Funzie arrested. Notwithstanding Tolbert's testimony probative of possible bias and defense counsel's argument, the jury convicted Funzie. Because cumulative testimony regarding Tolbert's possible bias would not have had a "any substantial effect" on the trial's outcome, there is no basis for reversible error. *United States v. White*, 492 F.3d 380, 404 (6th Cir. 2007) (internal quotation marks omitted).

## C.

"The task of empaneling an impartial jury is left to the sound discretion of the district court, and we review a district court's voir dire of the jury venire for abuse of that discretion." *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006). Where, as here, the district court directly examines prospective jurors as permitted under Federal Rule of Criminal Procedure 24(a)(1), the court "must at the very least solicit questions from both parties' attorneys," but the court "is by no means *required* to ask these question unless [the court] deems them 'proper' or otherwise helpful

to the voir dire process." *United States v. Sheldon*, 223 F. App'x 478, 481 (6th Cir. 2007); *see* Fed. R. Crim. P. 24(a)(2); *United States v. Phibbs*, 999 F.2d 1053, 1071 (6th Cir. 1993).

Funzie argues that the defense was denied the opportunity to explore whether prospective jurors understood the concept of guilt beyond a reasonable doubt. During voir dire, defense counsel requested that two prospective jurors be subjected to supplemental questions about their understanding of the government's burden of proof. The district court denied the request because—as defense counsel conceded—the court had already explained the burden of proof and confirmed that the jury venire would follow the law and the court's instructions. Accordingly, "the district court did not abuse its discretion in limiting duplicative questions from defense counsel during voir dire. These were within the court's 'broad discretion' to exclude." *United States v. Bates*, 552 F.3d 472, 478 (6th Cir. 2009) (citing *Phibbs*, 999 F.2d at 1071–72).

**D.**

Funzie argues that the following remark made by the prosecutor during closing argument was improper: "[W]hen [Tolbert] was on cross-examination, defense counsel, Mr. Irby, was very -- he did a very good job. He posed questions in a way that seemed to confuse Ms. Tolbert and also tried to bring out some inconsistencies in her statement [that she made to the police on the night of the incident]." PID 668. Because Funzie made "no contemporaneous objection[] to the alleged prosecutorial misconduct" at trial, we review under the plain-error standard. *United States v. McAllister*, 693 F.3d 572, 585 (6th Cir. 2012); *see United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994) (reviewing for plain error a defendant's claim of prosecutorial misconduct raised in a motion for mistrial where there was no contemporaneous objection at trial).

"This court employs a two-step inquiry to determine whether prosecutorial misconduct has occurred." *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008). "First, we determine whether a statement was improper. If it was improper, we next examine whether the statement was so 'flagrant' as to warrant reversal." *Id.* (internal citations omitted). In determining whether a statement was flagrant, we consider: "(1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused." *Id.* "If the challenged remarks are not flagrant, reversal is warranted only if proof of the defendant's guilt was not overwhelming, the defendant objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury." *United States v. Kuehne*, 547 F.3d 667, 688 (6th Cir. 2008) (internal quotation marks omitted). The prosecutor's remark must be examined "within the context of the trial," taking into account "defense counsel's conduct" and "the nature of the prosecutor's response." *United States v. Young*, 470 U.S. 1, 12 (1985).

During defense counsel's cross-examination, Tolbert conceded that part of her statement to the police was inaccurate. Defense counsel's line of questioning then caused Tolbert to hesitate on her answers. Moreover, Tolbert twice stated that defense counsel was "confusing" her, in response to counsel's characterization of her testimony that she said that she remembered what Funzie was wearing the night of the incident. She had testified just a few moments earlier that she did not remember whether Funzie was wearing the same clothing that he wore when she saw him at his

aunt's house. She clarified that Funzie was wearing the same jacket and "[p]robably" blue jeans, but that she could not recall other details because she was frightened.

The prosecutor—after remarking during closing argument that defense counsel seemed to confuse Tolbert—then sought to explain Tolbert's confusion and inconsistencies. The prosecutor called the jury's attention to her relationship with Funzie and that she had two children with him, her hesitation to incriminate him to the police despite the "fact that she was fearful for her life," and the fact that the police found the firearm in the location that she suspected. The prosecutor's isolated remark was not an improper attack against defense counsel. Rather, viewed in context, it was fair comment on Tolbert's testimony and defense counsel's conduct of cross-examination, during which Tolbert stated that defense counsel was confusing her. *See Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000); *cf. Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009). Thus, it cannot be said that the prosecutor's remark was improper, let alone so flagrant and prejudicial to warrant reversal for plain error.

### III.

For the foregoing reasons, we AFFIRM the judgment of conviction.