NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0057n.06

No. 22-6047

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 07, 2024
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMAAL PARKER,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: WHITE, NALBANDIAN, and MURPHY, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Jamaal Parker appeals his convictions of two drug offenses and one count of possession of a firearm in furtherance of a drug-trafficking crime, challenging the sufficiency of the evidence on the firearm count and the denial of his motion for a new trial. He also challenges his 290-month sentence as procedurally and substantively unreasonable. We AFFIRM.

## I.

### A.

In 2014, the DEA and other law-enforcement agencies began investigating Jamaal Parker and his co-defendant Jerriod Sivels. Using a confidential informant, agents began gathering information on their drug-trafficking operation in 2014. Starting in 2019, the DEA began monitoring Sivels's and Parker's calls and locations, gathering further evidence of their relationship and drug activity.

In February 2019, the DEA followed Sivels, Parker, and a third co-defendant, Anthony Poindexter, driving in two separate vehicles, to Atlanta. The group visited Nathaniel Wilkins, their supplier in Atlanta, at his residence on Mildred Place. The DEA asked the Georgia State Police to conduct a traffic stop of Poindexter's vehicle as he drove back from Atlanta toward Chattanooga. After pulling Poindexter over, police seized eight kilograms of cocaine from his vehicle. In the days following the stop and Poindexter's resulting arrest, Parker and Sivels spoke on the phone, and Parker stated that they took "a big loss."

On March 2, after intercepting phone calls indicating that Sivels was planning another trip to Atlanta to meet with Wilkins and obtain more cocaine, the DEA followed Parker's vehicle, a black Chevy Silverado, down I-75 towards Atlanta, where it went to Mildred Place. Officers observed a passenger in Parker's vehicle, whom they later identified as Esmanda Sparks, Parker's girlfriend. The DEA continued to surveil the vehicle for several hours, then asked the Georgia State Police to conduct a traffic stop. State Troopers Jordan Ennis, Eric Ramsey, and Charles Chapeau responded to the request.

Ramsey attempted to pull Parker over, and Parker initially pulled onto the shoulder. However, when Ramsey exited his vehicle, Parker started driving again, headed northbound on I-75. After observing this, Ennis "activated [his] emergency equipment, and . . . pursued the vehicle northbound on I-75." R.430, PID 3491. Parker was "weaving in and out of traffic" and "driving on the shoulder," going over 100 miles per hour. *Id.* at PID 3491–92. Ennis then performed a "precision immobilization technique": he made contact with the fleeing vehicle "to break the traction of the vehicle loose and then ultimately get the vehicle to rotate and leave the roadway." *Id.* at PID 3493. The Silverado stopped and Parker fled from the vehicle, running across all lanes of I-75 with a backpack in his hands. Ennis caught up, tackled him, and took him into custody.

He later searched the backpack and found four kilograms of cocaine that was eventually turned over to the DEA.

Meanwhile, Chapeau arrived on the scene and observed Ennis chase Parker across the highway. Parker's Silverado was still in the roadway, with Sparks still in the passenger seat. Chapeau ordered her out and handcuffed her. He then looked inside the Silverado, where he saw a firearm in plain view on the driver's-side floorboard. Chapeau seized the firearm and discovered it was loaded.

The DEA arrested Sivels shortly after and conducted a search of a residence where agents had observed Sivels and Parker engaged in drug-related activity. Officers found (among other items) crack and powder cocaine, $1,600 in bundled bills, drug-packaging supplies and other paraphernalia, and mail addressed to Parker.

**B.**

Parker was charged with several drug crimes and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). At Parker's three-day trial, the government presented testimony from DEA agents who investigated the drug conspiracy and Georgia State Troopers who conducted the traffic stops. Relevant here, DEA agent Andrew Bergen testified about his experience with drug-trafficking organizations, noting that it is common for drug traffickers to arm themselves with firearms to protect themselves, their families, and their merchandise. In particular, he testified, drug traffickers frequently carry firearms when dealing with drug quantities that are worth a lot of money, and a kilogram of cocaine costs approximately $28,000.

At the close of evidence, Parker made an oral motion for judgment of acquittal. The motion focused primarily on the § 924(c) charge and argued that the evidence was insufficient to show

that Parker possessed the gun found on the Silverado's floorboard or that he possessed it "in furtherance of" drug activity. The district court reserved ruling on the motion. After deliberating for less than a day, the jury acquitted Parker of one money-laundering count and convicted him of conspiracy to distribute cocaine and crack cocaine, use of a residence to distribute cocaine and crack cocaine, and possession of a firearm in furtherance of a drug-trafficking crime.

Parker filed a timely motion for new trial. He first argued that the verdict on the § 924(c) charge was against the manifest weight of the evidence. His second argument asserted that a new trial would promote the interest of justice because three jurors saw him in shackles in the courthouse hallway. The district court rejected both arguments, and in a footnote, denied Parker's oral motion for acquittal as well.

The probation office prepared a presentence investigation report (PSR) for Parker that calculated his sentencing guidelines range as 248 to 295 months. Although his initial guidelines range was only 188 to 235 months, the five-year minimum sentence imposed on the § 924(c) charge was required to run consecutively to his sentences on the other charges. At sentencing, Parker asked the district court to vary downward to a sentence of 180 months' imprisonment. However, the district court rejected that request and sentenced Parker to 290 months' imprisonment, just five months shy of the top of the guidelines range.

Parker now appeals.

**II.**

Parker first argues that the government failed to prove beyond a reasonable doubt that he "possessed" the firearm found on the Silverado's floorboard, as required under 18 U.S.C. § 924(c), and that the district court accordingly erred when it denied Parker's motion for judgment of acquittal on the § 924(c) count under Federal Rule of Criminal Procedure 29.

In reviewing a sufficiency-of-the-evidence claim, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). We review the claim de novo and draw "all reasonable inferences in support of the jury's verdict." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (quoting *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010)). We "will reverse a judgment for insufficient evidence 'only if the judgment is not supported by substantial and competent evidence upon the record as a whole.'" *Id.* (quoting *Wettstain*, 618 F.3d at 583). "Substantial evidence" is "more than a scintilla"—it is "such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015) (internal quotation marks and citation omitted). A defendant pursuing a claim based on the insufficiency of the evidence "bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)).

A conviction under 18 U.S.C. § 924(c)(1)(A) requires the government to prove the defendant "possess[ed] a firearm" "in furtherance of" a drug-trafficking or violent crime. The law recognizes actual and constructive possession. "Actual possession exists when a tangible object is in the immediate possession or control of the party"; "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (citation omitted). The government may prove possession by either direct or circumstantial evidence, and "[c]ircumstantial evidence alone

is sufficient to sustain a conviction." *United States v. Vichitvongsa*, 819 F.3d 260, 275 (6th Cir. 2016) (quoting *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014)). "'[M]ere proximity' to a gun is insufficient to establish constructive possession," but "evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice." *United States v. Newsom*, 452 F.3d 593, 610 (6th Cir. 2006) (quoting *United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003)).

The government's evidence showed that when Parker was pulled over, he was driving his own car, and there is no indication anyone else had driven the car that day. Officer Chapeau testified, and photo evidence at trial confirmed, that the gun was laying in plain view on the floor of the driver's side. And the government presented evidence that those involved in high-dollar drug trafficking, like Parker, often carry guns to protect themselves and their supply. *Cf. United States v. Castano*, 543 F.3d 826, 838 (6th Cir. 2008) (upholding firearm possession conviction in part based on testimony "about the frequency of finding firearms when making arrests for drug trafficking offenses and about the need for drug traffickers to protect themselves").

This case is thus distinguishable from the cases Parker relies on, all of which include facts that support an inference that the firearm was either unknown to the defendant or not in the defendant's possession. For example, in *United States v. Bailey*, "the only evidence supporting Bailey's conviction for constructive possession of the firearm is the fact that the loaded gun was found underneath Bailey's seat in the stolen car he was driving and that he had attempted to evade police." 553 F.3d 940, 945 (6th Cir. 2009). Further, Bailey "testified at trial that he was not aware of the gun inside the car; that he did not put a gun inside the car; and that he did not have a gun on his person when he got inside the car." *Id.* at 946. Similarly, the defendant in *United States v.*

*Wilson* was riding in the back seat of someone else's truck when it was stopped and searched. *See* No. 22-5068, 2022 WL 17456351, at *1 (6th Cir. Dec. 6, 2022). The police found three firearms in the vehicle, one of which was underneath the rear seat. *Id.* Notably, that firearm "was not visible without first lifting the seat." *Id.* The court overturned the district court's application of a sentencing enhancement based on Wilson's "possession" of the firearm because the "*only* evidence that the prosecution offered to show constructive possession was the rifle's location under the seat and the prosecutor's assertion that Wilson 'would have access' to the rifle in that location." *Id.* at *3 (citation omitted). But the "prosecution did not present evidence that the rifle was visible or that Wilson knew it was under the seat." *Id.* And the evidence in *United States v. Beverly* established "only that Beverly was in the kitchen of [a] residence, that Beverly was standing close to a waste basket which contained two guns, and that Beverly had at some point touched one of the guns." 750 F.2d 34, 37 (6th Cir. 1984).

In contrast, the evidence here showed that Parker was driving his own vehicle and the firearm was in plain sight by his feet. As we have previously observed, such evidence "serves as circumstantial evidence allowing the reasonable inference by the jury that Defendant knew the gun was there and likely placed it there himself." *United States v. Six*, 600 F. App'x 346, 356–57 (6th Cir. 2015).

Parker also argues that the trial testimony places the gun on the driver's-side floorboard sometime after Parker departed the vehicle, and at a time when Sparks was still in the car. Thus, Parker argues, there is insufficient evidence to show that Parker knew the gun was there while he was in the car; Sparks could have concealed it from him and placed it on the driver's-side floorboard after he fled the car. But "evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Brown*, 147 F.3d 477, 489 (6th Cir. 1998) (quoting *United*

*States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996)). Parker's alternative explanation may be plausible, but given the dearth of evidence in support of this theory, a jury would be entitled to reject that inference and instead infer that the gun found on the driver's-side floorboard was controlled by the driver. "[W]e cannot overturn the jury's decision merely because it had to draw reasonable inferences to find [the defendant] guilty." *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007). Accordingly, a reasonable juror could infer that Parker possessed the firearm.

Parker does not specifically argue on appeal that the government's evidence was insufficient to prove that he possessed the firearm "in furtherance of" his drug crimes, but such a challenge would fail as well.

We have "held consistently that possessing a gun as protection in the course of drug trafficking is sufficient to satisfy the 'in furtherance' element." *United States v. Reynolds*, 534 F. App'x 347, 361 (6th Cir. 2013) (collecting cases). Although courts often state that "the possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction," if the firearm is "strategically located so that it is quickly and easily available for use," that is sufficient. *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Other factors—such as whether the gun was loaded, the type of weapon, the legality of its possession, the nature of the drug activity, and the circumstances under which the gun was found—may also supply the required nexus between the firearm and the crime charged. *United States v. Maya*, 966 F.3d 493, 501 (6th Cir. 2020). As with possession, jurors are entitled to "infer . . . the purpose of a firearm." *United States v. Brown*, 732 F.3d 569, 576 (6th Cir. 2013).

The evidence showed that Parker possessed the gun while returning from his supplier in Atlanta with a significant amount of cocaine, and that drug traffickers carrying large quantities of

drugs often carry guns for their own protection and the protection of their supply. The gun was loaded and "strategically located" within arm's reach on the driver's-side floorboard. *Mackey*, 265 F.3d at 462. And there was no evidence that Parker possessed the firearm for any "'innocent' purpose—such as for 'hunting' or as a 'wall-mounted antique.'" *Maya*, 966 F.3d at 500 (alteration omitted) (quoting *Mackey*, 265 F.3d at 462). That evidence is sufficient to convince a rational juror beyond a reasonable doubt that the gun was possessed in furtherance of the drug-trafficking crime.

### III.

Under Federal Rule of Criminal Procedure 33, the district court may grant a motion for a new trial "if the interest of justice so requires." Parker filed a motion for a new trial shortly after the jury's verdict, presenting two bases: (1) the verdict on the § 924(c) charge was against the manifest weight of the evidence, and (2) the jurors' viewing him in shackles required a new trial.

### A.

Motions for a new trial asserting that the verdict is against the manifest weight of the evidence "are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 592–93 (6th Cir. 2007) (internal quotation marks and citation omitted). When considering such a motion, "district judges can act in the role of a 'thirteenth juror' and consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice." *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998) (quoting *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988)).

Motions for a new trial based on the weight of evidence are evaluated under a different standard than motions for acquittal: a motion for acquittal may be granted only if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*,

443 U.S. at 319; a new trial "based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence," *Lutz,* 154 F.3d at 589.

The district court rejected Parker's argument that the manifest weight of the evidence was against the jury's verdict convicting Parker of the § 924(c) count. Parker argues that the district court applied the wrong standard in assessing his motion—that it used the standard for motions for acquittal under Federal Rule of Criminal Procedure 29; not the "thirteenth juror" standard appropriate for motions for a new trial under Rule 33. And, Parker argues, under the proper standard a new trial is warranted.

We disagree. First, the district court understood the correct legal standard, stating: "In evaluating a motion under Rule 33, the Court may assess and weigh the evidence 'as a thirteenth juror.'" R.436, PID 3749 (quoting *Hughes*, 505 F.3d at 593). Admittedly, the court occasionally used the word "sufficient," the Rule 29 standard, in its discussion. But the order accurately stated the proper standard before any analysis. And the court relied on the correct legal standard in its conclusion, holding that "the manifest weight of the evidence does not fall against the proposition that Defendant possessed a firearm," and that "the evidence does not preponderate against the verdict." *Id.* at PID 3750–51. Notably, the opinion contained the court's own conclusions on what the evidence showed, which indicates it was independently weighing the evidence as required under Rule 33. *Contra United States v. Mallory*, 902 F.3d 584, 596–97 (6th Cir. 2018) (remanding for district court to apply correct standard on Rule 33 motion when district court "repeatedly characterized its task as evaluating the sufficiency of the evidence, rather than weighing the evidence for itself").

The district court also denied Parker's Rule 29 motion "[f]or the same reasons" as it denied his motion for a new trial. R.436, PID 3751. However, it is clear the court found that the evidence was sufficient to support the conviction *and* that the manifest weight of the evidence was not against the conviction. The court understood the two standards and found that neither standard was met.

Nor was the district court's conclusion that a new trial was not warranted based on the weight of the evidence an abuse of discretion. Unlike the district court, "[t]he court of appeals . . . *does not* sit as a 'thirteenth juror' to judge the credibility of witnesses" or "reweigh the evidence." *Ashworth*, 836 F.2d at 266. We ask only "whether the district court's determination that the evidence does not 'preponderate heavily against the verdict' is a clear and manifest abuse of discretion." *Id.* (citation omitted).

In light of that deferential standard, "virtually every one of our cases dealing with the weight of the evidence involves affirmances of district court denials of new trial motions." *United States v. Burks*, 974 F.3d 622, 627–28 (6th Cir. 2020) (collecting cases). This case is no exception. The district court assessed the evidence and determined that the Rule 33 standard was not met. Parker has not presented us with any reason to conclude that determination was an abuse of discretion; he offers no reason to disbelieve the government's witnesses, nor any evidence supporting his theory that the firearm in fact belonged to Sparks. *Cf. United States v. Funzie*, 543 F. App'x 545, 549 (6th Cir. 2013) ("That the evidence arguably points to a hypothesis other than guilt does not render the verdict against the greater weight of the evidence."). We thus affirm the district court's denial of Parker's motion for a new trial based on the weight of the evidence.

**B.**

Parker also appeals the district court's denial of his motion for a new trial based on jurors' viewing him in prison garb and shackles in the courtroom hallway. In the Chattanooga courthouse, defendants must cross a public hallway when moving between the holding-cell elevator and the courtroom. The U.S. Marshals typically check the hallway to ensure it is clear before crossing it with a defendant. On the last day of trial, before closing arguments, Parker was escorted across the public hallway wearing "orange pants and a sweatshirt, not street clothes, and . . . in leg irons and a waist cuff device." R.460, PID 4583. Although the hall was clear when Parker began to cross, two alternates and one primary juror saw Parker as he walked across the hallway. The jurors saw him for "less than five -- probably three seconds," and there was "no interaction, or no gawking or anything." *Id.* at PID 4582–83. The district court brought the incident to the parties' attention immediately after and defense counsel suggested the court question the jurors about whether they could be fair and impartial.

> When the jurors returned, the district court addressed them:
>
> If you have something that -- that is an affirmative response to my questions, just raise your hand, don't begin to talk, we'll note who raises their hands, if anybody, and then we'll talk to you in private. The first question: Since we broke last night, has everyone followed my instructions not to talk about the case other than in the jury room? Does anybody have any concerns about whether you've followed that instruction? . . . Number 2. Has anyone seen or heard anything that would cause you difficulty in being fair and impartial in performing your duties as a juror? Raise your hand if you've seen or heard anything that causes you concern. Anybody?

*Id.* at PID 4590. No jurors raised their hand. The court discussed the situation further with the parties outside the presence of the jurors, and after conferring with Parker, defense counsel agreed that the questioning was sufficient and that the court should "tell the jury they can start deliberating." *Id.* at PID 4593–95. Pursuant to Federal Rule of Criminal Procedure 23, the district

court asked Parker if he would like to stipulate to an 11-person jury and dismiss the one primary juror who had seen him in shackles. Defense counsel stated that he was "not asking to excuse" the juror, that he would "rather . . . have a jury of 12 than 11," and that he was "just fine to leave things as it is." *Id.* at PID 4597.

In his motion for new trial, Parker nonetheless argued that "the interest of justice" required a new trial based on the jurors seeing him in shackles. The district court rejected this argument, stating that Parker was "required to show actual prejudice where 'the conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial.'" R.436, PID 3751–52 (quoting *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991)). The district court recounted that it had questioned the jurors and none indicated his or her impartiality would be impaired. In addition, the jury acquitted Parker of the money-laundering charge, which "bolster[ed] the [c]ourt's confidence that they deliberated fairly and impartially." *Id.* at PID 3752. Thus, the court rejected this basis for a new trial.

Parker argues on appeal that the district court incorrectly believed that "actual prejudice" was required to grant a new trial, although, he argues, under Federal Rule of Criminal Procedure 33, a district court has discretion to grant a new trial whenever "the interest of justice so requires." He then raises a related question left open in *United States v. Munoz*, 605 F.3d 359 (6th Cir. 2010):

> whether a district court may grant Rule 33 relief where the verdict is not against the substantial weight of the evidence, and where no reversible error or violation of the defendant's substantial rights has occurred, but where the district court nonetheless believes that "the interest of justice" requires a new trial.

*Id.* at 374.

But we need not decide whether Rule 33 requires "actual prejudice" to grant a new trial nor answer the question left open by *Munoz*, because the district court's decision, read as a whole, shows that it would not have awarded a new trial even under a broader "trial unfairness" standard that does not require reversible error. *See Munoz*, 605 F.3d at 375.

Parker is correct that the district court stated that a new trial was not warranted because Parker had not shown actual prejudice from the shackles incident. But the court said more than that. It explained why it concluded that Parker's jury remained unbiased notwithstanding the shackles incident: no one indicated any bias when questioned and the jury acquitted Parker of the money-laundering count. The district court would not have awarded a new trial on fairness grounds when it expressed confidence that the jury "deliberated fairly and impartially." R.436, PID 3752; *see also United States v. Lattner*, 385 F.3d 947, 959 (6th Cir. 2004) (affirming denial of motion for new trial based on juror's view of defendant in shackles). We accordingly find no error in the district court's denial of a new trial based on the interest of justice.

## IV.

Parker's final challenge is to his within-guidelines sentence of 290 months' imprisonment. He challenges both the procedural and substantive reasonableness of this sentence. We review a district court's sentence "under a deferential abuse-of-discretion standard" for procedural and substantive reasonableness. *United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017) (quoting *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015)).

## A.

Parker first argues that his sentence was procedurally unreasonable because the district court failed to address several mitigation arguments: "the jury's acquittal for money laundering, the harshness of pretrial incarceration during the COVID lockdowns, the distorting Guidelines

effects of the § 924(c) count, and § 924(c)'s inclusion in the list of disqualifying offenses for earned-time credit under 18 U.S.C. § 3632(d)(4)(D)(xxii)." Appellant Br. 31.

When considering procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Young*, 847 F.3d 328, 370 (6th Cir. 2017) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). The district court must explain "its reasoning to a sufficient degree to allow for meaningful appellate review," *United States v. Trejo-Martinez*, 481 F.3d 409, 412–13 (6th Cir. 2007), and "set forth enough facts to satisfy this court that it considered the parties' arguments and had a reasoned basis for exercising its own legal decision-making authority," *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008).

"Where a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010) (citing *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc)). Here, the district court gave the parties an opportunity to object to the sentence imposed and its basis, and neither party objected. Accordingly, we review Parker's challenge to the adequacy of the district court's explanation for plain error. *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004).

The district court did not specifically address the four arguments Parker raises on appeal during its explanation of Parker's sentence. But we do not require the district court to address every issue in depth. It is sufficient that the "'context and the record make clear' that the sentencing judge understood [the mitigation arguments] but did not believe they outweighed other § 3553(a) factors that the judge found more pertinent." *United States v. Liou*, 491 F.3d 334, 340 (6th Cir.

2007) (quoting *Rita v. United States*, 551 U.S. 338, 359 (2007)). "On appeal, '[w]e focus less on what the transcript reveals that the court said and more on what the transcript reveals that the court did.'" *United States v. Paden*, 743 F. App'x 621, 624 (6th Cir. 2018) (alteration in original) (quoting *United States v. Taylor*, 696 F.3d 628, 634 (6th Cir. 2012)).

Here, the context and record make clear that the district court understood and engaged with Parker's arguments throughout the sentencing hearing. To begin, Parker filed a notice of objections to the presentence report, which the district court reviewed. And at the hearing, the parties argued their positions and the district court engaged with some of Parker's various arguments for leniency. For example, when Parker's counsel raised the issue of the distorting Guidelines effects of the § 924(c) count—an issue he claims the district court did not acknowledge—the district court interjected to clarify the specific guidelines range Parker would have faced without the § 924(c) count. That back-and-forth, along with the context and record of the full sentencing hearing, shows that the district court heard, understood, and considered Parker's non-frivolous arguments. *See Paden*, 743 F. App'x at 624 (affirming sentence even though "the district court did not specifically address" two of Paden's arguments because "it is apparent that [it] considered " those arguments "but concluded that [they] were of minimal significance in comparison to his conduct").

And unlike the cases on which Parker relies, the district court gave an extensive explanation of its reasons for the sentence imposed. *Contra Wallace*, 597 F.3d at 802. It responded to several arguments raised by the defense, but focused heavily on specific factors it believed warranted a significant sentence. The court noted that Parker moved "large quantities" of cocaine, and that his drug crimes were "brazen" and "calculated." R.457, PID 4510–11. It explained that Parker was "a professional long-term criminal who has engaged in remarkably destructive behavior over the

years." *Id.* at PID 4513. The case involved not only a significant quantity of drugs, but the "incredible" flight from law enforcement, which put "a lot of people at risk." *Id.* at PID 4515. And Parker committed his crimes "for profit, not to feed an addiction." *Id.* at PID 4514. In sum, the court was faced with "a really serious set of circumstances" and determined that "a guideline sentence" would "justly punish[]" Parker. *Id.* at PID 4513–14. Thus, the district court provided enough information for this court to easily "'answer the simple question of why the district judge decided to impose" the sentence it did. *Wallace*, 597 F.3d at 803. We reject Parker's argument that this lengthy explanation, combined with the clear indications from the rest of the sentencing transcript that the court considered Parker's mitigation arguments, was insufficient.

**B.**

Parker's final argument is that his 290-month sentence is substantively unreasonable. We review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *Young*, 847 F.3d at 370. To be substantively reasonable, a sentence must be proportionate to the seriousness of the circumstances of the offense and the offender, and sufficient, but not greater than necessary, to achieve the purposes of § 3553(a). *Vowell*, 516 F.3d at 512 (internal quotation marks and citation omitted). "[A] sentence may be substantively unreasonable where the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *Solano-Rosales*, 781 F.3d at 356 (cleaned up). In reviewing substantive reasonableness, "the district court is entitled to deference in its sentencing decisions because of its 'ringside perspective on the sentencing hearing and its experience over time in sentencing other individuals.'" *Vowell*, 516 F.3d at 510 (quoting *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007)). And the

court applies "an appellate presumption of reasonableness for within-guidelines sentences." *Vonner*, 516 F.3d at 389.

Parker argues that the district court "put little to absolutely nothing on the side of mitigation," and thus placed "an unreasonable amount of weight" on other factors. Appellant Br. 34 (quoting *Solano-Rosales*, 781 F.3d at 356). Parker also cites two specific reasons for mitigation that he thinks the district court should have credited: (1) "the reduced risk of recidivism that older individuals pose" and (2) a study from the U.S. Sentencing Commission finding that "federal prisoners had a substantially lower recidivism rate than state prisoners." *Id.* at 34–35.

Neither those factors nor any others raised at sentencing overcome the presumption of reasonableness accorded to Parker's sentence. The district court gave an extensive explanation of its reasons for Parker's sentence, and weighed each of the relevant § 3553(a) factors without unduly weighting any. That Parker "desired a more lenient sentence, without more, is insufficient to justify our disturbing the reasoned judgment of the district court." *Trejo-Martinez*, 481 F.3d at 413.

In sum, Parker gives us no reason to believe the district court erred in sentencing him, and we affirm the district court's sentencing as both procedurally and substantively reasonable.

## V.

For the reasons set out above, we AFFIRM the district court's judgment.